UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20038-CR-LENARD

UNITED STATES OF AMERICA

vs.

MELINA PIERRE-LOUIS,

        **Defendant.**
_____/

## FACTUAL PROFFER

The United States of America, and the defendant, Melina Pierre-Louis, through undersigned counsel, hereby stipulate and agree that the following facts are true and correct, and that, had this matter proceeded to trial, the Government would have proved the following facts, among others, beyond a reasonable doubt:

Between September 24, 2014 and March 26, 2015, the defendant, Melina Pierre-Louis, knowingly, voluntarily and willfully agreed with other persons, including but not limited to Michael Thomas, Wayne Thomas, Kenneth Wright, Essence Clervil and others, to possess cocaine base, intending that the cocaine base be distributed. The amount of cocaine base that the defendant agreed to possess, intending to distribute it, exceeded twenty-eight (28) grams.

In particular, communications of the defendant intercepted pursuant to court-issued Title III interception orders revealed that the defendant participated in the trafficking of crack cocaine by assisting in the operation of the retail distribution location ("trap house") at 2137 NW 92nd Street. The defendant advised Michael Thomas on how to conduct the sale of crack cocaine most successfully and picked up the proceeds of crack cocaine sales from the location in order to transport them to Thomas. For example, on February 8, 2015, the defendant engaged in a lengthy

conversation with Thomas regarding how best to conduct crack cocaine sales at 2137 NW 92nd Street. The defendant worried that Thomas should not be present at the location so often, and advisesd that Thomas has "a lot to lose." The defendant observed that "we have been there for six months already." Thomas suggested that he might simply train someone else to sell crack cocaine, and the defendant suggested that Thomas train "Suge" (Wright) to run the trap house so that Thomas would not have to personally attend the trap. The defendant further advised Thomas not to sell the "long ones" (referring to crack cocaine prepared by Thomas in a particular way) to people who visit the trap, but rather simply deliver the "long ones" to customers. By way of further example, on March 2, 2015, Thomas asked the defendant why the defendant had not picked up the money (referring to narcotics proceeds from the trap house). The defendant agreed to pick up the money. By way of further example, on March 3, 2015, Thomas informed the defendant that Thomas was traveling to the trap house, and asked the defendant if she knew the "count" (that is, the amount of narcotics proceeds available at the trap house). The defendant said that she remembered hearing the number "1290." The foregoing are merely illustrative examples of the

defendant's narcotics-related communications, rather than a comprehensive recitation.

The events described above took place, in at least substantial part, in the Southern District of Florida.

Date: 9/16/16          By: _____
                       SETH M. SCHLESSINGER /CRISTINA MORENO
                       ASSISTANT UNITED STATES ATTORNEY

Date: 9/16/16          By: _____
                       RICHARD A. SERAFINI, ESQ.
                       ATTORNEY FOR DEFENDANT

Date: 9/16/16          By: _____
                       MELINA PIERRE-LOUIS
                       DEFENDANT